# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| DANIEL S. GREENBERG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 3:24-cv-01430 |
| ) | Judge Crenshaw/Frensley |
| JUDGE ANNE C. MARTIN, et al., ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

## I. INTRODUCTION

Pending before the Court is Plaintiff's Emergency Motion for Temporary Restraining Order and Preliminary Injunction. Docket No. 16. Plaintiff filed this action against over sixty named and unnamed defendants[1], none of whom have been served notice of this action. *See* Docket Nos. 1, 14. Subsequently, no defendant has responded to the pending Motion. Docket No. 16. For the reasons set forth herein, the undersigned **RECOMMENDS** that the Plaintiff's Motion (Docket No. 16) be **DENIED**.

---

1 These defendants include Judge Anne C. Martin; Judge Vanessa Jackson; Judge Julie Palafox; Adam Barber; John T. Maher; Carla D. Gifford; Gale Hickman; Judge Holly Kirby; Miriam Galindo; Robert Bullock; Robert Sech; The State of Tennessee; Veritas HHS; Kevin Demar; Jonathan Skrmetti; Herbert Slatery; Cherry Glen Homeowners Association; Scott Weiss; Robert G. Williams; Lisa Risner; Barbara Fritz; Jennifer Posey; Judge Phillip Robinson; Judge Joseph Woodruff; Maria Salas; City of Franklin Tennessee; Metropolitan Government of Nashville & Davidson County; Stacey B. Edmondson; John Wilks; Tennessee Board of Professional Responsibility; Tennessee Judicial Ethics Committee; Rachel Harmon; Robertson, Anschutz, Schneid, Crane & Partners, PLLC; Layne Gillespie; Rubin Lublin TN PLLC; Patty Whiteboard; Orange County Board of Supervisors; Tim Palmer; Marjoree Kaup Haines; and Does 1-25.

## II. BACKGROUND

This action was brought by pro se Plaintiff Daniel Greenberg ("Mr. Greenberg") alleging civil rights violations against the defendants relating to his state court proceedings in Orange County, California; Williamson County, Tennessee; and Davidson County, Tennessee. Docket No. 1, pp. 8–16.

### A. Orange County Superior Court Proceedings

Mr. Greenberg and his ex-wife, Defendant Carla Gifford ("Ms. Gifford"), separated in 2013. Docket No. 16-11, p. 37. Defendant Judge Julie Palafox ("Judge Palafox") presided over Mr. Greenberg and Ms. Gifford's divorce trial, which began on June 6, 2017. Docket No. 1, p. 9. During trial, Mr. Greenberg was "rude and disrespectful," repeatedly violating courtroom decorum and intentionally interrupting the proceedings without a legal basis such that Judge Palafox found that Mr. Greenberg was purposefully disruptive.[2] Docket No. 16-11, p. 38; *see also* Docket No. 16-12, pp. 3, 7, 10, 14, 18, 19. After witnessing Mr. Greenberg's apparent ignorance of courtroom etiquette and reviewing a confidential child custody evaluation report that documented his mental health issues, Judge Palafox appointed a guardian ad litem ("GAL") to represent Mr. Greenberg. Docket No. 16-11, pp. 38–39; *see also* Docket No. 16-12, pp. 21–23.

Because Mr. Greenberg was unable "to control his outbursts to meaningfully participate in the legal proceedings as a self-represented party," he qualified for a GAL under California Code of Civil Procedure § 373. Docket No. 16-11, pp. 38–39. Judge Palafox did not find that Mr.

---

2 In the Judgment of Dissolution (Docket No. 16-11, pp. 37–99), Judge Palafox noted examples of Mr. Greenberg's ill-mannered courtroom behavior, including Mr. Greenberg "repeatedly interrupting the Court or [Ms. Gifford]; making faces at the Court or [Ms. Gifford]; shaking his finger at the Court; insulting the Court; demanding water and then spilling it on counsel's table; bringing a soft drink into the Court and spilling it on counsel's table; and bringing a monopoly game to the Court and setting it up during a proceeding." Docket No. 16-11, p. 47 (footnote 18).

Greenberg lacked the mental capacity to understand the legal proceedings. *Id.* at 48. However, a Medical Verification Report from Mr. Greenberg's doctor diagnosed Mr. Greenberg with "generalized anxiety disorder, major depressive disorder, possible bipolar and a seizure disorder." *Id.* at 48. Instead, Judge Palafox reasoned that Mr. Greenberg's conduct precluded him from meaningfully participating because his disruptive nature prevented both parties from experiencing an equitable trial. *Id.* at 47–48. His purposefully antagonistic behavior, not his mental capacity, entitled him to a GAL. *Id.* at 49.

Initially, Judge Palafox temporarily suspended the trial and appointed Defendant Gale Hickman ("Mr. Hickman"), an attorney from the Court's Probate approved guardian list, as Mr. Greenberg's GAL. Docket No. 16-12, p. 22–23. However, when Mr. Hickman declined to represent Mr. Greenberg, attorney Defendant Robert Bullock ("Mr. Bullock") appeared as Mr. Greenberg's GAL when the trial recommenced on September 7, 2017. Docket No. 16-11, p. 39.

While Mr. Greenberg had a GAL, his mother, Marian Wise ("Ms. Wise"), attended the legal proceedings and directed the GAL "on the presentation of evidence for [Mr. Greenberg]." *Id.* at 45. During the divorce, Mr. Greenberg and Ms. Gifford had a dispute over community property. *Id.* at 49. They identified the following properties:

> (1) 2115 Acklen Avenue #10, Nashville, TN ("Acklen");
> (2) 721 Sweet Cherry Court, Nashville, TN ("Sweet Cherry"); and
> (3) 2641 Blakemore, Nashville, TN ("Blakemore").

*Id.* Mr. Greenberg and Ms. Wise asserted that these properties were separate from Mr. Greenberg and Ms. Gifford's community property; whereas Ms. Gifford maintained that these properties were either acquired or financed with community funds from their marriage. *Id.* While living in California, they repurposed the properties as rentals with Ms. Wise as the acting property manager. *Id.* at 70. Because Ms. Wise had an interest in these properties, she actively participated in the trial

3

as a joinder. *Id.* at 45–46, 51–55.

**<u>1. Acklen Property</u>**

Mr. Greenberg acquired Acklen before his marriage to Ms. Gifford. *Id.* at 52. While Ms. Wise contended that she loaned Mr. Greenberg $88,000 to purchase Acklen, she failed to provide sufficient evidence to support that claim. *Id.* at 51–53. As the party that introduced evidence, Ms. Wise bore the burden of offering proof of authenticity, but Judge Palafox found Ms. Wise's records untrustworthy. *Id.* at 53–54. Her records included handwritten, undated, and unspecific "bank deposits, credit card statements, check registers, cancelled checks, some to [Mr. Greenberg] with the word 'loan' handwritten on them, and unmarked receipts." *Id.*

For some time period during Mr. Greenberg and Ms. Gifford's marriage, they resided in Acklen. *Id.* at 52. While residing in Acklen, their community funds paid for and maintained the property. *Id.* Furthermore, the parties refinanced Acklen with community funds to renovate the property. *Id.* During his marriage and after his separation, Mr. Greenberg was the managing spouse for Acklen. *Id.* at 53. As the managing spouse, Mr. Greenberg was required to provide necessary evidence to determine Ms. Gifford's true interest in Acklen. *Id.* at 61. Because Mr. Greenberg did not comply with this requirement, Ms. Gifford was entitled to fifty percent of the property and rental profits. *Id.*

After Mr. Greenberg and Ms. Gifford separated, Mr. Greenberg gave Ms. Wise a Deed of Trust for Acklen to "secure a $700,000 promissory note," which Ms. Wise recorded in Davidson County, Tennessee two days later *Id.* at 53. However, this Warranty Deed did not impact Ms. Gifford's interest in Acklen. *Id.* at 61. Judge Palafox ordered Acklen to be sold by Special Master Jennifer Posey. Docket No. 16-21, pp. 3, 5.

4

## 2. Sweet Cherry Property

Mr. Greenberg and Ms. Gifford acquired Sweet Cherry during their marriage and for a time used it as the family residence. Docket No. 16-11, p. 54. While Ms. Gifford asserted that the couple used funds from refinancing Acklen to purchase the home, Ms. Wise maintained that she loaned Mr. Greenberg $60,000 for the Sweet Cherry down payment. *Id.* at 54–55. In response, Ms. Gifford denied knowledge of this loan and Ms. Gifford offered a promissory note for the stated amount. *Id.* at 54. Judge Palafox found the evidence suspicious because the loan receipt from the Bank of Nashville was illegible and dated for April 23, 2013, which was shortly after the couple separated. *Id.* Furthermore, neither party provided evidence that Mr. Greenberg made repayments on the promissory note. *Id.* at 55. Regardless of how the parties purchased Sweet Cherry, Mr. Greenberg and Ms. Gifford were married at that time, making Sweet Cherry community property for the purposes of divorce proceedings. *Id.* at 56.

Like with Acklen, Mr. Greenberg gave Ms. Wise a Deed of Trust for Sweet Cherry after his separation, which she recorded in Davidson County, Tennessee. *Id.* at 57. This action violated the Automatic Temporary Restraining Orders (ATROs) that California family courts issue to restrict divorcing parties from transferring property outside the marriage. *Id.* at 62. Thus, Ms. Gifford was entitled to one hundred percent of Sweet Cherry and its rental profits. *Id.* Judge Palafox ordered Mr. Greenberg to either sell or transfer Sweet Cherry to Ms. Gifford. *Id.*

## 3. Blakemore Property

Blakemore was also purchased while Mr. Greenberg and Ms. Gifford were married. *Id.* at 57. However, Blakemore was a joint investment property between Mr. Greenberg and Ms. Wise. *Id.* Again, Ms. Gifford asserted that community funds were used to acquire Blakemore while Ms. Wise contended that she purchased Blakemore in full and listed Mr. Greenberg as a joint tenant.

*Id.* at 58. Neither party presented the Blakemore title, so Blakemore was considered community property because it was acquired during the marriage. *Id.*

Unsurprisingly, Mr. Greenberg conveyed his rights, title, and interest in Blakemore to Ms. Wise without Ms. Gifford' knowledge or consent after the separation. *Id.* Due to this "collusion to deprive [Ms. Gifford] of her rights, title and interests" in Blakemore, Judge Palafox ordered the property be sold by a Special Master. *Id.* at 63; *see also* Docket No. 16-21, p. 5. Additionally, Judge Palafox found that Ms. Gifford was entitled to a fifty-percent interest in Blakemore while Ms. Wise was entitled to the remaining interest as a tenant in common. Docket No 16-25, p. 4.

### B. California Court of Appeal, Fourth District

After Judge Palafox issued the Judgment of Dissolution (Docket No. 16-11, pp. 37–99) but before the parties fully complied with the orders, Ms. Wise died. *In re Marriage of Greenberg & Gifford*, No. G058200, 2021 WL 4097756, at *1 (Cal. Ct. App. Sept. 9, 2021). Mr. Greenberg appealed the judgment, claiming that the judgment was void because Ms. Wise died. *Id.* Mr. Greenberg also challenged Judge Palafox's determinations related to Ms. Gifford's community property interests. *Id.* However, Mr. Greenberg did not argue that Judge Palafox improperly appointed him a GAL in his appeal as he does in his Complaint in this action (Docket No. 1, p. 9). *In re Marriage of Greenberg & Gifford* at *1. Because Mr. Greenberg's claims lacked merit under California law, the California Court of Appeal affirmed Judge Palafox's judgment, and the Supreme Court of California declined review. *Id.*; Docket No. 16-27, p. 1.

### C. Tennessee Court Proceedings

Ms. Gifford moved to Tennessee after the divorce proceedings where the State of Tennessee filed a notice of enrollment of foreign judgment in the Circuit Court for Williamson County. *State ex rel. Gifford v. Greenberg*, No. M202100510COAR3CV, 2022 WL 872193, at *1

(Tenn. Ct. App. Mar. 24, 2022). Although Mr. Greenberg objected, the Circuit Court "conclud[ed] that the California judgment was entitled to full faith and credit in Tennessee." *Id.* Subsequently, Tennessee enrolled Judge Palafox's judgment regarding the child support and property division in the Tennessee state courts. *See id.* Mr. Greenberg appealed the Circuit Court's decision, but the Court of Appeals of Tennessee dismissed the appeal because Mr. Greenberg did not comply with Tennessee Rule of Appellate Procedure 27. *Id.* at *1, *3.

On February 20, 2023, Defendant Robertson, Anschutz, Schneid, Crane & Partners, PLLC ("RASC") filed a Complaint for Interpleader against Mr. Greenberg, Ms. Gifford, the Estate of Ms. Wise, and the State of Tennessee in the Chancery Court for Davidson County, Tennessee at Nashville. Docket No. 16-11, pp. 1–4. After Acklen was foreclosed upon, RASC obtained the exceeds proceeds from the foreclosure. *Id.* at 1. Because Ms. Gifford acquired an interest in Acklen through a California Court Order, RASC filed its Complaint to request the Chancery Court to determine the rights of the parties and the allocation of the excess funds. *Id.* at 3. Similarly, on August 7, 2023, Ms. Gifford filed an Amended Petition to Register and Domesticate Foreign Divorce Decree in the Circuit Court for Davidson County, Tennessee at Nashville. Docket No. 16-26, pp. 1–6.

Despite being advised that his previous courtroom behavior was reprehensible, Mr. Greenberg maintained the same demeanor during all Tennessee proceedings. *See* Docket No. 16-32, pp. 1–2. For example, Mr. Greenberg appeared at a hearing on January 29, 2025, via Zoom where he interrupted an unrelated case by flashing notecards that "displayed the following words and phrases:
'Calls for speculation,' 'Hearsay,' and 'Your Honor.'" *Id.* at 2. Instead of appointing Mr. Greenberg another GAL, the Circuit Court for Williamson County revoked his "privilege to

7

participate via Zoom." *Id.* When his outbursts did not achieve the desired results, Mr. Greenberg filed third-party complaints against "several judges currently serving in the Twentieth Judicial District," requesting all "Chancellors and Circuit Court Judges of the Twentieth Judicial District to recuse themselves from presiding over" Mr. Greenberg's cases. Docket No. 16-15, p. 2. As a result, Mr. Greenberg's cases were consolidated and reassigned to Defendant Senior Judge Vaness Jackson. *Id.*; Docket No. 16-9, p. 3.

### D. Federal Courts

This case is not Mr. Greenberg's first interaction with the United States District Court for the Middle District of Tennessee. *See* Docket No. 16-27, p. 2; *see also Greenberg v. Slatery,* 2023 WL 2771640 (6th Cir. March 28, 2023). In 2022, Mr. Greenberg filed a complaint with the Court regarding the California proceedings, alleging that multiple California and Tennessee state officials and judges "maliciously used the judicial process to deprive him of his right to parent his children." *Greenberg v. Slatery* at *1. Because his prayer for relief asked the Court to reconsider child custody, the Court dismissed his complaint for lack of subject matter under the domestic-relations exception. *Id.*

Mr. Greenberg unsurprisingly appealed the dismissal, arguing that the Court erred by applying the domestic-relations exception because his claims stem from civil rights violation allegations. *Id.* Amongst those violations, he argued "that the California court's appointment of a guardian ad litem for him violated his rights, that state officials should have intervened on his behalf, and that the judgments against him should be considered void." *Id.* In addition to the domestic-relations exception, Mr. Greenberg's claims were likely barred from federal court by "California's principles of res judicata and absolute judicial immunity." *Id.* at *2. The Sixth Circuit Court of Appeals affirmed the district court's judgment. *Id.* at *3.

8

### E. Plaintiff's Argument

Mr. Greenberg essentially argues that Judge Palafox violated his constitutional rights when she appointed him a GAL. Docket No. 1, p. 9. In his Complaint, Mr. Greenberg alleges that Judge Palafox threatened him and appointed Mr. Hickman as retaliation. *Id.* Mr. Greenberg falsely believes that he was entitled to a competency hearing before a court could appoint a GAL to represent him. *Id.* However, Judge Palafox never found Mr. Greenberg lacked the mental capacity to participate in the trial. Docket No. 16-11, pp. 47–49. On the contrary, Judge Palafox repeatedly asserted that Mr. Greenberg was not of sound mind such that he could not meaningfully participate in the proceedings because of his conduct; thereby, finding him *legally* incompetent. *Id.* Because Mr. Greenberg maintains that he was denied his civil rights during the divorce proceedings, he argues that the Judgment of Dissolution (Docket No. 16-11, pp. 37–99) is void. Docket No. 1, p. 9. As a result, he asserts that any decision based on the California judgment is subsequently void, like fruit of the poisonous tree. *Id.* at 9–18. Therefore, Mr. Greenberg contends that a multitude of California and Tennessee state officials, agencies, and judges have conspired against him to participate in a scheme to deny him constitutional rights. *Id.*

### III. LAW AND ANALYSIS

### A. Temporary Restraining Orders and Preliminary Injunctions

Temporary restraining orders and preliminary injunctions are considered preventive, prohibitory, or protective measures taken pending resolution on the merits. *See Clemons v. Board of Educ.*, 228 F. 2d 853, 856 (6th Cir. 1956). Preliminary injunctions and temporary restraining orders are extraordinary remedies, which should be granted only if the movant carries his or her burden of proving that the circumstances demand it. *See Overstreet v. Lexington Fayette Urban Cty. Gov't*, 305 F. 3d 566, 573 (6th Cir. 2002).

Plaintiff, as the moving party, has the burden of proving that the circumstances "clearly demand" an injunctive order. *Id.* at 573. The court must balance four factors in deciding whether to issue a temporary restraining order ("TRO") or preliminary injunction: "(1) whether the movant has a strong likelihood of success on the merits; (2) whether the movant would suffer irreparable injury without the injunction; (3) whether issuance of the injunction would cause substantial harm to others; and (4) whether the public interest would be served by issuance of the injunction." *City of Pontiac Retired Employees Ass'n. v. Schimmel*, 751 F. 3d 427, 430 (6th Cir. 2014) (internal quotation marks omitted). Courts will consider the same factors in determining whether to grant a request either for a temporary restraining order or a preliminary injunction. *N. E. Ohio Coal for Homeless and Srv. Employees Intern. Union, Local 1199 v. Blackwell*, 467, F. 3d 999, 1009 (6th Cir. 2006).

These four factors are "factors to be balanced, not prerequisites that must be met." *Michael v. Futhey*, 2009 WL 4981688, at *17 (6th Cir., December 17, 2009) (quoting *Six Clinics Holding Corp., II v. Cafcomp Systems*, 119 F. 3d 393, 400 (6th Cir. 1997)). Nonetheless, it remains that the hallmark of injunctive relief is the likelihood of irreparable harm. *Patio Enclosures, Inc. v. Herbst*, 39 Fed. Appx. 964, 967 (6th Cir. 2002) ("[t]he demonstration of some irreparable injury is a *sine qua non* for issuance of an injunction."); *see also Winter v. Natural Resources Defense Council, Inc.*, 555 U. S. 7, 22–23, 129 S. Ct. 365, 172 L. Ed 2d 249 (2008) (rejecting the notion that a mere "possibility" of irreparable injury was sufficient for a preliminary injunction and holding that "plaintiffs seeking preliminary relief [are required] to demonstrate that irreparable injury is *likely* in the absence of an injunction") (emphasis in original). "A finding that there is simply no likelihood of success on the merits is usually fatal." *Gonzalez v. National Board of Medical Examiners*, 225 F. 3d 620, 625 (6th Cir. 2000).

The plaintiff bears the burden of demonstrating his entitlement to a preliminary injunction, and his burden is a heavy one. Injunctive relief is "an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet*, 305 F.3d at 573.

**B. Guardian Ad Litem ("GAL")**

Under California law, a court, upon its own motion, may appoint a GAL to represent a party to an action or proceeding who lacks "legal competence to make decisions." Cal. Civ. Proc. § 373. A person who lacks legal capacity to make decisions fits one of the following descriptions:

> (A) A person who lacks capacity to understand the nature or consequences of the action or proceeding.
>
> (B) A person who lacks capacity to assist the person's attorney in the preparation of the case.
>
> (C) A person for whom a conservator may be appointed pursuant to Section 1801 of the Probate Code.

Cal. Civ. Proc. § 372(a)(C)(4)(A)–(C). More broadly, an adult satisfies Cal. Civ. Proc. § 372(A)(C)(4)(A)–(B) when he or she "lacks capacity to represent himself or herself" in court proceedings. *J.W. v. Superior Ct.*, 17 Cal. App. 4th 958, 965, 22 Cal. Rptr. 2d 527 (1993); *see also McClintock v. West*, 219 Cal. App. 4th 540, 549–50, 162 Cal. Rptr. 3d 61 (2013).

When a court appoints a GAL to a parent for child custody proceedings, it must explain to the parent "the purpose of the guardian ad litem appointment, the authority the guardian will have (and which the parent will not have) in the litigation, and why the [judge] believes the appointment should be made." *In re Jessica G.*, 93 Cal. App. 4th 1180, 1188, 113 Cal. Rptr. 2d 714 (2001), *as modified on denial of reh'g* (Dec. 19, 2001). However, a formal hearing is unnecessary to preserve a parent's right to due process. *Id.* at 1187–88. To determine competency under California Civil

Procedure § 373, a court should, at minimum, make an inquiry sufficient to satisfy "whether the parent understands the nature of the proceedings and can assist the attorney in protecting his/her rights." *In re Sara D.*, 87 Cal. App. 4th 661, 672, 104 Cal. Rptr. 2d 909 (2001).

**C. The Case at Bar**

Mr. Greenberg asserts that he is entitled to a TRO or preliminary injunction because he has sufficiently demonstrated that his claims demand an extraordinary remedy. *See* Docket No. 16, pp. 3–4. Regarding the four-factor balancing test established in *Schimmel*, Mr. Greenberg contends that his circumstances satisfy each factor. *Id.* Mr. Greenberg claims that the "[c]lear constitution violations documented" in his Complaint (Docket No. 1) concerning Judge Palafox's "void orders" indicate he will likely be successful on the merits. *Id.* at 3. He will suffer irreparable harm without a TRO or preliminary injunction because he will suffer "property loss under void orders" and "parent-child separation." *Id.* Although he will suffer harm without judicial intervention, he asserts that a TRO or preliminary injunction would not cause substantial harm to others because the public has an interest in "judicial integrity" and "prevention of continuing fraud." *Id.* at 4. Similarly, Mr. Greenberg maintains that if the Court issues a TRO or preliminary injunction in this matter, the public will benefit from the promotion of "[j]udicial integrity," "prevention of fraud," and the "protection of fundamental rights." *Id.*

**1. Likelihood of Plaintiff's Success on the Merits**

Mr. Greenberg's claims all stem from Judge Palafox's appointing a GAL to represent Mr. Greenberg during his California divorce proceedings. *See* Docket No 1, pp. 9–18. As the root of this cause of action, the likelihood of Mr. Greenberg's claims succeeding on the merits depends on whether the GAL appointment was appropriate. *See id.* at 9. While Mr. Greenberg argues that he was entitled to a competency hearing before Judge Palafox could appoint a GAL, he is mistaken

about the law governing guardianship appointments.³ *See* Docket No. 1, p. 9; *In re Jessica G.*, 93 Cal. App. 4th at 1187–88.

To preserve due process, Judge Palafox was required to inform Mr. Greenberg "the purpose of the guardian ad litem appointment, the authority the guardian will have (and which the parent will not have) in the litigation, and why the [judge] believes the appointment should be made." *Id.* at 1188. Judge Palafox fulfilled her responsibilities when she explained to Mr. Greenberg that he was unfit to represent himself and that his poor conduct necessitated a GAL who would assist him in the proceedings. *See* Docket No. 16-12, pp. 22–23. Considering that Judge Palafox personally witnessed Mr. Greenberg interrupt Ms. Gifford's opening statement and make frivolous objections, she sufficiently inquired whether Mr. Greenberg understood the nature and consequences of the proceedings. *In re Sara D.*, 87 Cal. App. 4th at 672. Because the GAL appointment was likely appropriate, Mr. Greenberg is unlikely to succeed on the merits of his claims. *See Schimmel*, 751 F. 3d at 430.

## 2. Whether the Movant Would Suffer Irreparable Injury Without the Injunction

Mr. Greenberg requests a TRO that suspends his Tennessee state court proceedings and prohibits enforcement of the California court orders, or a preliminary injunction that declares the California court orders void and reinstates his interest in the community property. Docket No. 16, p. 3. Further, Mr. Greenberg wants custody and parenting time over his remaining minor child. Docket No. 16-8, p. 14. However, Mr. Greenberg could obtain custody or visitation if he complied

---

3 In his Complaint (Docket No. 1), Mr. Greenberg applies case law to his circumstances. Unfortunately, the cases he cites are either misapplied or not binding law in California, Tennessee, or the Middle District of Tennessee. For instance, he cites to the following cases: *In re Steven*, No. G058623, 2021 WL 2451456 (Cal. Ct. App. June 16, 2021), which refers to mental incompetency not legal incompetency; *Thomasson v. Thomasson*, 2018-Ohio-2417, 153 Ohio St. 3d 398, 106 N.E.3d 1239 which was decided in the Supreme Court of Ohio; and *In re Wellman*, 3 Kan. App. 100, 45 P. 726 (1896) from the Court of Appeals of Kansas.

with the California court orders. *See* Docket No. 16-11, p. 42. Because Judge Palafox found that Mr. Greenberg was "the perpetrator of domestic violence against" Ms. Gifford and has documented mental health issues, she did not award Mr. Greenberg "any custody or visitation until he submits to an updated mental health evaluation." *Id.* at 41–42. Therefore, Mr. Greenberg caused his own "irreparable harm" because he has had nearly six years to regain custody over his minor child without stalling the Tennessee proceedings. *See id.* at 35, 42.

Similarly, Mr. Greenberg's own deceptive behavior during his separation caused him to lose his interests in Acklen, Sweet Cherry, and Blakemore when he attempted to transfer the properties to Ms. Wise without Ms. Gifford's knowledge or consent. *See id.* at 62–63. Those actions occurred before Judge Palafox appointed a GAL. *Id.* at 53, 56, 59. Additionally, Mr. Greenberg provided evidence for Ms. Wise to present at trial to prove sole ownership, but Judge Palafox found the evidence unconvincing. *Id.* at 54, 58, 60. Therefore, regardless of whether Mr. Greenberg had a GAL or not, the property split decision was inevitable. *See id.* Mr. Greenberg's alleged irreparable harm does not originate from the Tennessee proceedings or GAL appointment, but from his own actions.

### 3. Whether Issuance of the Injunction Would Cause Substantial Harm to Others

Despite asserting that a TRO or preliminary injunction would not cause substantial harm to others, Mr. Greenberg has not offered sufficient evidence to support that claim. Docket No. 16, p. 3. There are several parties that are interested in settling Ms. Wise's estate, so unduly delaying that settlement may cause harm. *See* Docket No. 16-11, pp. 1–4.

While Mr. Greenberg requests interest in Acklen, Sweet Cherry, and Blakemore, he fails to explain why obtaining that interest will not substantially harm the current owners or residents. *See* Docket No. 16, p. 3. Because Acklen and Sweet Cherry were ordered to be sold by a Special

14

Master, the current inhabitants have a valid interest in the properties. *See* Docket No. 16-21, pp. 3, 5. Revoking that interest and evicting the inhabitants would cause unnecessary and substantial harm. Ms. Wise was ordered to sell Blakemore but died as a tenant in common with Ms. Gifford before she sold the property. Docket No. 16-11, p. 62–63. Therefore, Ms. Gifford has sole interest in Blakemore. *See id.* Ms. Gifford would suffer if the Court demanded she convey her interest in Blakemore to Mr. Greenberg, the man against whom she had a Domestic Violence Restraining Order. *See id.* at 41.

**4. Whether the Public Interest Would be Impacted by Issuance of the Injunction**

Mr. Greenberg loosely argues that a TRO or preliminary injunction would serve the public interest because it would hold California and Tennessee state courts to a higher level of integrity. Docket No. 16, p. 4. However, he fails to explain how the outcome of his cases will directly impact public interest. *See id.* Mr. Greenberg does not allege that the defendants are systematically denying all divorced fathers from foreign states due process. *See id.* Instead, his Complaint alleges a scheme that only burdens himself. *See* Docket No. 1, pp. 9–18. The public has no stake in Mr. Greenberg's affairs.

## IV. RECOMMENDATION

After balancing all the factors, the Court does not find that Mr. Greenberg is entitled to a TRO or preliminary injunction. Mr. Greenberg's Motion is supported only by conclusory statements, and the requested remedy is not only unnecessary to protect Mr. Greenberg's future interest but detrimental to the tangential parties. Each factor that the Court must consider when evaluating a motion for TRO weighs against Mr. Greenberg's favor. It is Mr. Greenberg's burden to demonstrate that he is entitled to such an exceptional remedy, but he has failed to meet that burden.

15

For the reasons discussed herein, the undersigned **RECOMMENDS** that Mr. Greenberg's Motion for Temporary Restraining Order and Preliminary Injunction (Docket No. 16) be **DENIED**.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985), *reh'g denied*, 474 U.S. 1111, 106 S. Ct. 899, 88 L. Ed. 2d 933 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

**JEFFERY S. FRENSLEY**
**United States Magistrate Judge**