# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |
|---|---|
| DANIEL S. GREENBERG, | |
| Plaintiff, | |
| | Case No. 3:24-cv-01430 |
| v. | |
| | Judge Waverly D. Crenshaw, Jr. |
| JUDGE ANNE C. MARTIN et al., | Magistrate Judge Luke A. Evans |
| Defendants. | |

To:     The Honorable Waverly D. Crenshaw, Jr., District Judge

## REPORT AND RECOMMENDATION

There are five motions currently pending in this case. Pro se plaintiff Daniel Greenberg has filed motions for judicial notice of a multi-level judicial conspiracy (Doc. No. 27); for an expedited hearing (Doc. No. 33); for leave to amend his complaint to add a governmental staff attorney to the 24 defendants already accused of "systematic judicial conspiracy" (Doc. No. 35 at 3); and for recusal of Magistrate Judge Jeffrey Frensley (Doc. No. 39). Meanwhile, the Metropolitan Government of Nashville & Davidson County ("Metro") has filed a motion to dismiss this case under more than one part of Rule 12(b) of the Federal Rules of Civil Procedure. (Doc. No. 30.)

For the reasons below, the Court respectfully recommends granting Metro's motion dismissing the complaint in its entirety under the *Rooker-Feldman* doctrine.

## I.     Background

Stripped of its rhetoric—including, for example, allegations that the State of Tennessee, the City of Franklin, Metro, public officials in California and Tennessee, and "all defendants" are conspiring "to traffic minor children through sham family court proceedings" (Doc. No. 1 at 19)—the complaint concerns acrimonious divorce proceedings that were finalized in California in 2019

(*see* Doc. No. 30-6 at 2) and that have been domesticated in Tennessee state court. (*See, e.g.*, Doc. No. 27-2.) The allegations in the complaint are difficult to understand (*see, e.g.*, Doc. No. 1 at 10 (Tennessee state court system "committed wire fraud through [its] electronic filing system")), but plaintiff helpfully has made the most important point very clear. Plaintiff wants a declaratory judgment declaring, as *void ab initio*, all California and Tennessee state court orders that had anything to do with his divorce proceedings on or after June 6, 2017, when a California judge appointed a guardian ad litem to represent him. (Doc. No. 1 at 15, 16.) Plaintiff seeks injunctive relief that 1) would stay the same orders that he would also have declared void; and 2) would restore his parental rights, which implies the existence of state-court judgments entered against him regarding parental custody. (Doc. No. 1 at 15–16, 17.) Among other requests, plaintiff also seeks economic damages of approximately $1 million that he links explicitly to the value of three properties that he lost during his divorce proceedings, meaning that the requested monetary award would be intended to nullify state-court orders and judgments concerning those properties. (Doc. No. 1 at 17.) Finally, plaintiff seeks referrals for criminal investigations, apparently for all defendants and at least in part because of the issuance of various state-court orders and judgments since June 6, 2017. (Doc. No. 18 at 1.)

Recognizing that plaintiff seeks review and rejection of multiple state-court orders and judgments, Metro seeks dismissal of the case, among other reasons, under the *Rooker-Feldman* doctrine. Metro notes how plaintiff has left no doubt about the appellate review that he would have this Court perform:

> Here, the source of all Plaintiff's injuries is the California guardian ad litem appointment, divorce decree, and related orders. Everything Plaintiff complains of in this lawsuit stems from those actions, including Chancery Court Case No. 23-0224-I, which concerns the proceeds from the sale of marital property that was sold pursuant to the California court's divorce decree and division of marital property. (Compl. ¶¶ 21-22 at 25.)

But Plaintiff does not limit his scope to the Chancery Court interpleader action; he directly attacks the California court's guardian ad litem appointment. He asks this Court to declare that the appointment was void. (Compl. ¶ 50 at 15, ¶ 54 at 16-17.) He attributes damages to all defendants based on the appointment and subsequent orders in the California court. (*Id.* ¶¶ 9-13 at 9; ¶ 34 at 11; ¶ 37 at 12.) Plaintiff goes further still; he asks the Court to declare subsequent California court orders void, plus any orders related to the domestication of those orders in Tennessee courts, plus "all derivative orders." (*Id.* ¶ 50 at 15; ¶ 54 at 16-17.) Finally, he asks the Court to restore his parental rights, return marital property to him, and stop enforcement of the California court's orders. (*Id.*) These are hallmarks of an improper attempt to press this Court into service as an appellate court of review over state court judgments.

(Doc. No. 30 at 10.) In response, plaintiff does not address the explicit request in the complaint to declare void all applicable state-court orders and judgments issued on or after June 6, 2017. Plaintiff instead asserts that the source of his federal claims "is the coordinated conspiracy between Tennessee judicial officers." (Doc. No. 33 at 6.)

## II.     Discussion

Of all the issues that the parties have raised in their motions, the Court must review the *Rooker-Feldman* argument first under Rule 12(b)(1), and it must review the argument as to all defendants even though only Metro raised it. *See Saker v. Nat'l City Corp.*, 90 F. App'x 816, 818 n.1 (6th Cir. 2004) (unpublished opinion) ("Because *Rooker–Feldman* concerns federal subject matter jurisdiction, this court may raise the issue *sua sponte* at any time."). The *Rooker-Feldman* doctrine "is a doctrine about subject-matter jurisdiction, rather than a case's merits." *Harrison v. Douglas*, No. 25-1897, 2026 WL 1417073, at *2 (6th Cir. May 20, 2026) (unpublished opinion) (citations omitted). If the Court lacks subject-matter jurisdiction over this case then it would have to dismiss the case immediately because it would lack any power to adjudicate any issues raised in it. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 ("Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (internal quotation marks and citation omitted). The Court,

therefore, must answer whether the *Rooker-Feldman* doctrine deprives it of subject-matter jurisdiction before it can address any argument related to the merits of the case. *See Does v. Whitmer*, 69 F.4th 300, 305 (6th Cir. 2023) (jurisdictional defects must be decided before the merits) (citation omitted); *Children's Hosp. Med. Ctr. of Akron v. Youngstown Assocs. in Radiology, Inc.*, 612 F. App'x 836, 837 (6th Cir. 2015) (unpublished opinion) ("This order-of-decision doctrine is now well established.") (citations omitted).

The Court also notes that a motion to dismiss under *Rooker-Feldman* is a facial attack on subject-matter jurisdiction. *See Eichenberger v. Jamison*, No. 2:20-CV-1543, 2020 WL 5749938, at *1 (S.D. Ohio Sept. 25, 2020) (citation omitted). When reviewing a facial attack, the Court reviews its jurisdiction in a way analogous to a challenge under Rule 12(b)(6), accepting allegations in the complaint as true and granting pro se litigants appropriate leniency. *See Burnett v. Michigan*, No. 1:24-CV-55, 2024 WL 3721741, at *4 (W.D. Mich. June 18, 2024), *report and recommendation adopted*, No. 1:24-CV-55, 2024 WL 3466258 (W.D. Mich. July 19, 2024) (citations omitted). As with challenges under Rule 12(b)(6), the Court "may consider the Complaint and any exhibits attached thereto, public records, items appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long as they are referred to in the Complaint and are central to the claims contained therein." *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (citation omitted). Here, the Court has considered the state-court orders that the parties have included in the docket. The orders are referenced in the complaint and are central to plaintiff's allegations that he has suffered unlawful orders and judgments entered against him.

Under the *Rooker-Feldman* doctrine, a District Court lacks subject-matter jurisdiction over a case when 1) the plaintiff lost a judgment in state court; 2) the complaint in the federal case

asserts injuries caused by the state court's judgment itself; 3) the state court entered judgment before the federal case commenced; and 4) the plaintiff seeks relief that would require review and rejection of the state court's judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). "The second and fourth requirements are the key to determining whether a federal suit presents an independent, non-barred claim." *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010). Final judgments, for purposes of *Rooker-Feldman*, need not come from a state's highest court. *See generally T. M. v. Univ. of Maryland Med. Sys. Corp.* ("*T. M.*"), 608 U.S. ___, No. 25-197, 2026 WL 1751823 (June 18, 2026).

The following hypothetical scenarios illustrate the difference between a prohibited claim attacking a state-court judgment and an independent claim attacking a defendant's conduct:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.

> Further, by focusing on the requirement that the state-court judgment be the source of the injury, we can see how a suit asking a federal court to deny a legal conclusion reached by a state court could nonetheless be independent for *Rooker–Feldman* purposes. Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker–Feldman*, of the state-court judgment.

*McCormick v. Braverman*, 451 F.3d 382, 394 (6th Cir. 2006) (editorial marks and citation omitted).

This case satisfies all four *Rooker-Feldman* elements. First, plaintiff lost judgments in California and Tennessee state courts concerning his divorce, parental custody, and certain real

property. These judgments were final determinations on the merits of issues that plaintiff litigated. *Cf. Stewart v. Ladd*, No. 2:24-CV-27, 2024 WL 4103368, at *1 (E.D. Tenn. July 17, 2024) (*Rooker-Feldman* applied to Chancery Court order and judgment that was a final determination of the merits).

Second, plaintiff asserts in his complaint that he suffered "direct economic damages, loss of property, legal fees, loss of income, [and] future loss of income" (Doc. No. 1 at 5) and that the state-court judgments are the conduct that directly imposed injuries on him. *Cf. Bagley v. Thompson*, No. 3:26-CV-00236, 2026 WL 1759667, at *2 (D. Nev. June 18, 2026) (*Rooker-Feldman* barred argument that state court dismissal of complaint against Division of Social Services was an independent due-process violation). Because finalizing the divorce, the custody arrangements, and the property disposition required judgments from state court, plaintiff could not have suffered the direct injuries that he has alleged without the judgments in question. Plaintiff's particular request to "restore" his parental rights distinguishes this case from *Pittman v. Cuyahoga Cnty. Dep't of Child. & Fam. Servs.*, 241 F. App'x 285 (6th Cir. 2007) (unpublished opinion), a pre-*T. M.* case that addressed individual conduct and yet ended with an acknowledgement that "it is unclear what impact [plaintiff's] success in this federal lawsuit would have on the underlying state court judgment." *Id.* at 289. *See also Holloway v. Brush*, 220 F.3d 767, 777 (6th Cir. 2000) (en banc) (pre-*T. M.* Section 1983 claims about social-worker conduct do not implicate *Rooker-Feldman*, but plaintiff's desire to have a federal court "restore her children to her" is something that a federal court "cannot do").

Third, the judgments that allegedly injured plaintiff issued before plaintiff commenced this case on March 25, 2025.

Finally, plaintiff states explicitly in the complaint that he wants a declaratory judgment that "all orders" on or after June 6, 2017 are void; he also wants an injunction that would undo his current custody arrangements and "restore" his parental rights. (Doc. No. 1 at 15–17.) *Cf. T. M.,* 2026 WL 1751823, at *7 (June 18, 2026) (*Rooker-Feldman* barred complaint seeking declaratory and injunctive relief against a state-court consent order governing psychiatric discharge); *Chiu v. Global Realty Investor Trust Mgmt.*, No. 3:25-CV-00583, 2026 WL 1842570, at *1 (W.D.N.C. June 25, 2026) (*Rooker-Feldman* barred complaint to rescind a foreclosure sale and to restore title in a property in the plaintiff's name). Plaintiff additionally seeks compensatory and punitive damages related to the adverse property judgments rendered against him. *Cf. Ferguson v. Industry Indianapolis*, No. 1:25-CV-01566, 2026 WL 1792750, at *2 (S.D. Ind. June 23, 2026) (*Rooker-Feldman* barred declaratory and compensatory relief on a claim of unlawful eviction from an apartment). There is no way to declare "all orders" on or after June 6, 2017 void without reviewing them, and any monetary damages awarded to plaintiff because of the adverse property judgments would nullify the monetary effect on him because of them. *Compare Hohenberg v. Shelby Cnty., Tennessee*, 68 F.4th 336, 340 (6th Cir. 2023) (*Rooker-Feldman* did not apply, where plaintiffs' "claims target ancillary litigation expenses rather than the application of law to fact") *and Marks v. Tennessee*, 554 F.3d 619, 623 (6th Cir. 2009) (*Rooker-Feldman* did not apply, where plaintiff complained of state-court disability accommodations and not state-court orders themselves) *with Kafele v. Lerner, Sampson & Rothfuss, L.P.A.*, 161 F. App'x 487, 490 (6th Cir. 2005) (unpublished opinion) (*Rooker-Feldman* applied, where "[e]ach of the myriad and vague claims set forth by the plaintiffs rests on the premise that the state court entry of foreclosure was invalid").

With the *Rooker-Feldman* doctrine applicable here, the Court lacks subject-matter jurisdiction to proceed any further. The Court accordingly declines to review any of the other arguments or motions that the parties have raised.

**III.     Recommendation**

For all of the foregoing reasons, the Court respectfully recommends granting Metro's motion to dismiss (Doc. No. 30) and dismissing the complaint in its entirety, and as to all defendants, under the *Rooker-Feldman* doctrine. The Court further recommends denying the other pending motions to dismiss (Doc. Nos. 27, 33, 35, 39) as moot.

Any party has fourteen days after being served with this Report and Recommendation to file specific written objections. Failure to file specific objections within fourteen days of receipt of this Report and Recommendation can constitute a waiver of appeal of the matters decided. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Cowherd v. Million*, 380 F.3d 909, 912 (6th Cir. 2004). A party who opposes any objections that are filed may file a response within fourteen days after being served with the objections. Fed. R. Civ. P. 72(b)(2).

Entered this 2nd day of July, 2026.

_____
LUKE A. EVANS
United States Magistrate Judge